United States District Court
District of Massachusetts

```
_____     )
                                )
SECURITIES AND EXCHANGE         )
COMMISSION,                     )
                                )
          Plaintiff,            )
                                )   Civil Action No.
          v.                    )   14-14099-NMG
                                )
RICHARD WEED,                   )
                                )
          Defendant.            )
_____     )
```

MEMORANDUM & ORDER

GORTON, J.

This case arises out of a government investigation of a pump-and-dump scheme ("the scheme") involving publicly-traded shares of CitySide Tickets, Inc. ("CitySide"). Plaintiff Securities and Exchange Commission ("the SEC" or "the Commission") contends that defendant Richard Weed ("Weed" or "defendant"), an attorney, together with two former stockbrokers, Coleman Flaherty ("Flaherty") and Thomas Brazil ("Brazil"), committed securities fraud in connection with the scheme.

Pending before the Court were (1) the SEC's motion for partial summary judgment on the SEC's first, second, fourth, fifth and sixth claims for relief (Docket No. 69) and (2) Weed's motion for partial summary judgment on the SEC's third claim for

relief (Docket No. 73).  By order of the Court (Docket No. 105)
entered on May 10, 2018, the SEC's motion was allowed and Weed's
motion was denied, with the notation that an explanatory
memorandum and order ("M&O") would follow.  This is that M&O.

I.   **Background and Procedural History**

     A.   **Factual Background**

Brazil and Flaherty are former stockbrokers who ran several
iterations of the pump-and-dump scheme with the assistance of
Weed.  Flaherty controlled a public shell company, UpTurn.  In
2009, the owner of CitySide, a sporting event ticket broker,
proposed that Flaherty make an investment in CitySide.  Flaherty
counter-proposed a reverse merger as a result of which CitySide
would become a publicly-traded company after a merger with the
public shell company, UpTurn.

Brazil and Flaherty participated in the reverse merger deal
and Weed performed the legal work necessary to complete the
merger.  As a result of the merger, Flaherty and Brazil held
debt in CitySide, in the form of promissory notes, which could
be converted into shares of CitySide stock.  To facilitate the
reverse merger, Weed completed legal work, including 1) a name
change application with the Financial Industry Regulatory
Authority ("FINRA"), 2) the paperwork for the reverse stock
split, 3) the issuing of a controlling share block to CitySide's

owner and 4) the conversion of the promissory notes into shares that were freely tradable ("unrestricted") securities.

After the merger, Flaherty and Brazil arranged for stock promoters to issue favorable press releases about CitySide in order to inflate the value of CitySide stock. Weed accomplished the conversion of the promissory notes held by Brazil and Flaherty into share certificates that were deposited into brokerage firms for trading and which allowed Flaherty and Brazil to execute sales of the certificates after the value of the stock was inflated. In a conversation that was recorded, Weed told Flaherty (who was cooperating with federal law enforcement agents at the time) "the deals are all vapor, and they cannot sustain themselves for six weeks".

In order to facilitate the conversion of the notes into freely tradable shares, Weed wrote legal opinion letters to transfer agents of CitySide who were responsible for issuing new securities and recording changes in ownership of securities. In those letters, Weed opined that the transfer agent could lawfully allow the issuance of unrestricted shares of stock under 17 C.F.R. § 230.144. He represented to the transfer agents that

> [n]one of the persons who have elected to convert [their]
> notes into common stock are affiliates of the [i]ssuer and
> none of these persons have been affiliates during the
> preceding three months.

The recipients of the shares were, in fact, Flaherty or nominees of Flaherty and Brazil, all affiliates of the issuing company. Flaherty sold approximately $1.3 million of CitySide stock after his notes were converted.

**B. Procedural History**

The SEC filed the civil complaint in this action on November 6, 2014 against Weed, Flaherty and Brazil alleging six violations of the securities laws. The following month, a grand jury returned an indictment charging Weed with criminal violations of Section 10(b), 15 U.S.C. §§ 78j(b) & 78ff, and Rule 10b-5, 17 C.F.R. § 240.10b-5 as well as conspiracy, 18 U.S.C. § 371, and wire fraud, 18 U.S.C. § 1343. In July, 2015, this Court allowed a motion to stay the proceedings in this civil action during the pendency of the parallel criminal proceedings against Weed in Criminal Action No. 14-10348-DPW.

On May 16, 2016, after ten days of trial, a jury convicted Weed on all nine counts of the indictment and he was subsequently sentenced to a term of 48 months imprisonment. That conviction was affirmed in October, 2017 by the First Circuit Court of Appeals ("the First Circuit") and Weed's petition for a writ of certiorari was denied by the United States Supreme Court in May, 2018. This Court had previously entered a consent judgment as to Brazil and Flaherty in October, 2016.

The SEC and Weed filed motions for partial summary judgment
in March, 2018. Those motions are the subject of this
memorandum.

## II.  **Motions for Partial Summary Judgment**

### A.  **Legal Standard**

The role of summary judgment is "to pierce the pleadings
and to assess the proof in order to see whether there is a
genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d
816, 822 (1st Cir. 1991).  The burden is on the moving party to
show, through the pleadings, discovery and affidavits, "that
there is no genuine dispute as to any material fact and that the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(a).  A fact is material if it "might affect the outcome of
the suit under the governing law." Anderson v. Liberty Lobby,
Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material
fact exists where the evidence with respect to the material fact
in dispute "is such that a reasonable jury could return a
verdict for the nonmoving party." Id.

If the moving party has satisfied its burden, the burden
shifts to the non-moving party to set forth specific facts
showing that there is a genuine, triable issue. Celotex Corp. v.
Catrett, 477 U.S. 317, 324 (1986).  The Court must view the
entire record in the light most favorable to the non-moving

party and indulge all reasonable inferences in that party's
favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).
Summary judgment is appropriate if, after viewing the record in
the non-moving party's favor, the Court determines that no
genuine issue of material fact exists and that the moving party
is entitled to judgment as a matter of law.

### B. Application

#### 1. SEC's Motion for Partial Summary Judgment

The SEC contends that Weed is collaterally estopped from
disputing the facts that form the basis of his criminal
conviction. The Commission asserts that the factual
underpinnings of those convictions are sufficient to establish
the necessary elements of violations of the securities laws
alleged in this civil action.

Weed responds that collateral estoppel is inapplicable here
because he did not have a full and fair opportunity to defend
himself in the criminal proceeding. He claims that the
government failed to produce exculpatory evidence for his trial
counsel, rendering his conviction constitutionally infirm.
Further, Weed contends that the factual issues that formed the
basis of the criminal conviction are not identical to the SEC's
claims in this civil action. Finally, he suggests that, with
respect the sixth claim, collateral estoppel cannot apply

because the factual allegations supporting that claim were not essential to the judgment in the criminal case.

Collateral estoppel bars the re-litigation of any factual or legal issue that was actually decided in previous litigation on a different cause of action involving a party to the first case. Keystone Shipping Co. v. New England Power Co., 109 F.3d 46, 51 (1st Cir. 1997).  A party seeking to invoke collateral estoppel must establish that

> (1) the issue sought to be precluded in the later action is the same as that involved in the earlier action; (2) the issue was actually litigated; (3) the issue was determined by a valid and binding final judgment; and (4) the determination of the issue was essential to the judgment.

Ramallo Bros. Printing, Inc. v. El Dia, Inc., 490 F.3d 86, 90 (1st Cir. 2007).  Courts routinely hold that a defendant convicted in a criminal proceeding is collaterally estopped from re-litigating the operative facts in a subsequent civil proceeding. See, e.g., United States v. Podell, 572 F.2d 31, 35 (2d Cir. 1978) ("It is well-settled that a criminal conviction, whether by a jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by judgment in the criminal case.").

### a. Full and fair litigation of criminal proceeding

As a preliminary matter, Weed's contention that he did not have a "full and fair" opportunity to litigate the issues in his

criminal proceeding is unconvincing.  He suggests that the
government in the criminal proceeding failed to produce certain
exculpatory evidence, rendering the trial unfair and he has
filed post-trial motions advancing that argument in the criminal
proceeding.  He maintains that, at the very least, the Court
should refrain from applying collateral estoppel until the
judicial officer presiding over the criminal proceeding has
adjudicated Weed's motion to compel production of the alleged
exculpatory evidence.

Since the date of the filing of Weed's memoranda in
opposition to the SEC's motion for partial summary judgment, the
motion to compel in the criminal proceeding has been denied.
United States v. Weed, 14-cr-10348-DPW, ECF No. 242 (April 9,
2018).  Weed has subsequently filed a motion to vacate pursuant
to 28 U.S.C. § 2255 but that petition does not abrogate the
judgment entered in the criminal proceeding or the First
Circuit's affirmance thereof. United States v. Weed, 873 F.3d 68
(1st Cir. 2017), cert. denied, 2018 WL 785268 (2018).

The pendency of a criminal appeal or a habeas petition
seeking post-trial relief "generally does not deprive a judgment
of its preclusive effect". United States v. Int'l Bhd. of
Teamsters, Chauffeurs, Warehousemen and Helpers of Am., 905 F.2d
610, 621 (2d Cir. 1990); see also SEC v. Illarramendi, 260 F.
Supp. 3d 166, 178 (D. Conn. 2017) ("[T]he pendency of

[defendant]'s habeas petition and en banc action do not undermine the preclusive effect of his sworn admissions, on which his criminal conviction was based."). The pending habeas petition in Weed's criminal proceeding does not implicate the application of collateral estoppel here.

### b. Identity of issues

With respect to the substance of the collateral estoppel argument Weed asserts, first, that the factual issues that formed the basis for his the criminal conviction are not identical to the issues underlying the SEC's civil claims. He contends that the prosecution in the criminal proceeding and the SEC here seek to show that the legal opinion letters he wrote were false in materially different ways. Specifically, Weed suggests that the SEC bases its claims on the alleged legitimacy of the promissory notes whereas the prosecution in the criminal case did not challenge that legitimacy. Next, Weed claims that evidence of his intent introduced at the criminal trial relies on conduct that post-dates conduct pled in this civil complaint.

The complaint alleges violations of Section 10(b) of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, violations of Section 17(a) of the Securities Act of 1933 ("the Securities Act"), 15 U.S.C. § 77q(a), and aiding and abetting violations of Section 10(b).

To establish a violation of Section 10(b) and Rule 10b-5 of the Exchange Act, the plaintiff must establish (1) a material representation or omission or manipulative practice, such as a scheme to defraud, (2) in connection with the purchase or sale of a security, (3) with scienter, or a wrongful state of mind and (4) the use of interstate commerce. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5; SEC v. Ficken, 546 F.3d 45, 48 (1st Cir. 2008). Scienter requires a plaintiff to show that the defendant acted with the intent to "deceive, manipulate, or defraud". Flannery v. SEC, 810 F.3d 1, 9 (1st Cir. 2015).

Section 17(a) of the Securities Act prohibits fraud and material misrepresentations or omissions in the offer or sale of securities. 15 U.S.C. § 77q(a); see also Ficken, 546 F.3d at 47. To establish liability under Section 17(a) in connection with the offer or sale of securities, the SEC must prove "essentially the same elements" that are required to establish liability under Section 10(b) and Rule 10b-5. SEC v. Monarch Funding Corp., 192 F.3d 295, 308 (2d Cir. 1999). With respect to Section 17(a)(2) and 17(a)(3), however, no showing of scienter is required and negligence is sufficient. Ficken, 546 F.3d at 47 (citing Aaron v. SEC, 446 U.S. 680, 694-97 (1980)).

District courts have applied collateral estoppel in the securities fraud context

because the elements necessary to establish civil liability
under Section 17(a) and 10(b) are identical to those
necessary to establish criminal liability under Section
10(b).

SEC v. Haligiannis, 470 F. Supp. 2d 373, 382 (S.D.N.Y. 2007).

The jury in Weed's criminal trial found him guilty on all

counts, including count two, charging Weed with securities

fraud. Weed, 873 F.3d 68 (1st Cir. 2017).  Count two of the

indictment and claims one, two, four, five and six in this civil

proceeding are based on the fraudulent opinion letters written

to transfer agents of CitySide opining that the Rule 144 safe

harbor applied because the note holders were not affiliated with

the issuer.  The First Circuit summarized the trial evidence as

to those letters, noting that

> Weed's role was essential here: he wrote opinion letters to
> the transfer agents invoking Rule 144 and representing that
> "[n]one of the persons who have elected to convert" the
> notes into stock "are affiliates of the [i]ssuer". But, as
> Weed now acknowledges, these statements were "wrong".

Weed, 873 F.3d at 71.

One of the frauds alleged by the SEC in this civil action

is the same as the fraud for which Weed was convicted in the

criminal proceeding, making collateral estoppel applicable here.

See e.g., SEC v. Desai, 145 F. Supp. 3d 329, 334 (D.N.J. 2015)

("The acts that were the predicate of [defendant]'s guilty plea

in the parallel criminal action are also the same alleged acts

in the instant civil action.").  Weed's contention that

collateral estoppel cannot apply because the civil complaint contains _additional_ allegations that were not prosecuted in the criminal case is erroneous.

The SEC alleges violations of Section 17(a) and 10(b) that are based, in part, on the same factual allegations litigated in the criminal proceeding.  The existence of additional allegations that may _also_ support a finding of fraud under the same provisions does not preclude the Court from applying collateral estoppel here. See Haligiannis, 470 F. Supp. 2d at 382 n.7 (applying collateral estoppel where the civil complaint "also allege[d] that defendants made false statements in connection with offering materials, while the criminal indictment does not").  Although Weed is not estopped from litigating the factual allegations not charged in the criminal indictment, he would not benefit from doing so because the fraud for which Weed was convicted in the criminal case is "more than sufficient to support liability under Sections 17(a) and 10(b)." Id.

Accordingly, Weed is collaterally estopped from re-litigating his liability under claims one, two, four, five and six.  Because the Court has determined that collateral estoppel applies, it declines to address the SEC's alternative argument that the Commission is entitled to summary judgment even absent a finding of collateral estoppel.

### c. Remedies

The SEC seeks the following remedies: (1) a permanent injunction enjoining Weed from further violations of Section 10(b) and Rule 10b-5 and Section 17(a), (2) civil penalties in an amount within the court's discretion, (3) a permanent penny stock bar and (4) a permanent officer and director bar.  The SEC notes that, because there is an order of forfeiture in the criminal case against Weed requiring him to forfeit the $90,000 in legal fees that he received as a result of his illegal conduct, the SEC is not seeking disgorgement in this civil action.

Weed responds by suggesting that, even if the Court allows the SEC's motion for partial summary judgment, the Court should decline to impose civil monetary penalties or an order of debarment because those penalties are excessively harsh and do little to deter any future violation of the securities laws. Weed notes that he is already facing a term of incarceration and criminal fines and forfeiture of at least $190,000.  He contends that his portion of the proceeds of the alleged scheme, roughly $90,000 in legal fees over four years, was relatively modest. He will likely be 60 years old upon his release from prison and thus any future service as an officer or director of a public company is unlikely.

### i.  Permanent injunction

Section 20(b) of the Securities Act and Section 21(d)(1) of the Exchange Act provide for the imposition of injunctive relief preventing future violations of the securities laws upon a showing that a defendant has violated the securities laws and that there is a reasonable likelihood of future violations. 15 U.S.C. § 77t(b); 15 U.S.C. § 78u(d)(1); SEC v. Sargent, 329 F.3d 34, 39 (1st Cir. 2003).  To determine the reasonable likelihood of any future violation, courts consider, among other factors,

> the nature of the violation, including its egregiousness and its isolated or repeated nature, as well as whether the defendants will, owing to their occupation, be in a position to violate again.

Sargent, 329 F.3d at 39 (citing SEC v. Youmans, 729 F.2d 413, 415 (6th Cir. 1984)).  Courts also consider whether the defendants have "recognized the wrongfulness of their conduct". Id. (citing SEC v. Manor Nursing Ctrs., 458 F.2d 1082, 1100-01 (2d Cir. 1972)).

The Court finds that those factors weigh in favor of enjoining Weed from future violations of Section 10(b), Rule 10b-5 and Section 17(a).  The violations here were repeated in nature.  Weed assisted Flaherty and Brazil in running through four recurrences of the pump-and-dump scheme and was prepared to run it a fifth time. Weed, 873 F.3d at 71.  With respect to Weed's recognition of the wrongfulness of his conduct, he

maintains his innocence and has shown no remorse for his conduct.  Accordingly, because there is a reasonable likelihood that, unless enjoined, Weed might engage in further violation of the securities laws, the Court will enjoin him from doing so.

### ii.  Civil penalties

The SEC contends that a Tier III civil penalty is appropriate here, notwithstanding the penalties and period of incarceration that will be imposed in the criminal proceeding. Weed responds that civil penalties are inappropriate because of the fines and forfeiture in the criminal proceeding and because of the modest amount of gains Weed received as a result of the scheme.

Section 20(d) of the Securities Act and Section 21(d) of the Exchange Act authorize the imposition of civil penalties. 15 U.S.C. § 77t(d); 15 U.S.C. § 77u(d).  The imposition of civil penalties is intended to "penalize [the] defendant for . . . illegal conduct" and deter future securities violations. Sargent, 329 F.3d at 41 (citing H.R. Rep. No. 98-355, at 7 (1983).

In determining an appropriate fine, courts consider the egregiousness of the violation, the willingness to admit wrongdoing, the isolated or repeated nature of the violations, the degree of scienter involved, the defendant's willingness to cooperate with the authorities and the defendant's current

-15-

financial situation. SEC v. Esposito, 260 F.3d 79, 93 (D. Mass. 2017). Tier III penalties are imposed where the elements of a Tier II penalty, fraud, deceit, manipulation, or a deliberate or reckless disregard of a regulatory requirement are present, along with "substantial losses or . . . significant risk of substantial losses to other persons". Id. (citing SEC v. Kern, 425 F.3d 143, 153 (2d Cir. 2005)).

The Court has considered the relevant factors in deciding whether to grant injunctive relief and finds that those factors weigh in favor of imposing Tier III civil penalties. The SEC suggests that the exact amount of the penalty is within the Court's discretion. Balancing the seriousness of Weed's conduct with recognition that the forfeiture and fines imposed in the criminal proceeding are significant, the Court will impose a civil penalty in the amount of $150,000, the amount prescribed by the relevant statutes and regulations for one violation of the securities laws. 17 C.F.R. § 201.1001 & Tbl. I (increasing the maximum Tier-III penalty from the statutory limit of $100,000 to account for inflation adjustments).

### iii. Permanent penny stock and officer/director bar

The SEC also asks this Court to impose a permanent penny stock bar pursuant to 15 U.S.C. § 78t(g) and 15 U.S.C. § 78u(d)(6) and an officer and director bar pursuant to 15 U.S.C.

§ 77t(e) and 15 U.S.C. § 78t(d)(2).  Weed responds that the
Court should decline to impose a debarment order or penny stock
bar because he will likely be over 60 years old when his prison
term ends and future service as an officer or director of a
public company is highly unlikely.

In determining whether to permanently enjoin a defendant
from servicing as an officer or director of a public company,
courts consider (1) the egregiousness of the underlying
securities law violation, (2) whether defendant was a repeat
offender, (3) defendants' role in the fraud (4) defendant's
degree of scienter, (5) defendant's economic stake in the fraud
and (6) the likelihood that misconduct will recur.  SEC v. Patel,
61 F.3d 137, 141 (2d Cir. 1995).  The standard for imposing a
penny stock bar essentially "mirrors that for imposing an
officer-or-director bar".  SEC v. Universal Exp., Inc., 475 F.
Supp. 2d 412, 429 (S.D.N.Y. 2007).

The Court has discussed at length many of the applicable
factors in relation to the permanent injunction on future
violations of securities laws and the imposition of civil
penalties.  To reiterate, Weed's conduct here was pervasive.
See, e.g., SEC v. StratoComm Corp., 89 F. Supp. 3d 357, 366
("[T]he instant infractions were not isolated occurrences but
rather appeared to be part of a longstanding and somewhat
elaborate scheme to defraud investors.").  His role was

-17-

"essential" to the scheme.  <u>Weed</u>, 873 F.3d at 71.  The Court

therefore will impose a penny stock bar and officer and director

bar as to Weed.

### 2. Weeds Motion for Partial Summary Judgment

Weed moves for partial summary judgment on claim three,

which alleges violations of Section 5(a) and 5(c) of the

Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).  He contends

that the securities that were issued were exempt from

registration under Section 3(a)(9) of the Securities Act because

Section 3(a)(9) permanently exempts an entire class of

securities and is therefore not a transactional exemption.

The Court notes, first, that Weed's interpretation of

Section 3(a)(9) was considered and rejected in the District

Court's disposition of his motion for acquittal and motion for a

new trial in the criminal proceeding.  In considering those

post-trial motions at the sentencing hearing, Judge Woodlock

noted that "3(a)(9) for 80 years has been viewed as

transactional" and reiterated

> that 3(a)(9) does not provide an exemption for the
> distributions of the securities that were received here,
> and it is a recent contrivance to say otherwise, nowhere
> supported by any materials or glosses and certainly not
> supported by a careful analysis of the historic development
> of Section 3(a)(9) and the Securities Act of '33 and the
> Securities and Exchange Act of '34.

<u>United States</u> v. <u>Weed</u>, 14-cr-10348-DPW, ECF No. 196 (Sept. 21,

2016).  While a decision of another United States District Judge

is not binding in this case, <u>Camreta</u> v. <u>Greene</u>, 563 U.S. 692,

709 n.7 (2011), it is persuasive. <u>United States</u> v. <u>Baez</u>, 878 F.

Supp. 2d 288, 295 (D. Mass. 2012). Although on appeal the First

Circuit held that it did not need to resolve the parties'

dispute with respect to the meaning of Section 3(a)(9), it noted

that

> Weed's proffered interpretation of Section 3(a)(9) is,
> however, contrary to the reading that the SEC has
> consistently employed for more than eighty years.

<u>Weed</u>, 873 F.3d at 73 (citing <u>In the Matter of Thompson Ross</u>

<u>Sec.</u>, 6 S.E.C. 1111, 1118 (1940); <u>Letters of Gen. Counsel</u>

<u>Discussing Application of Section 3(a)(9)</u>, Securities Act

Release No. 646, 1936 WL 31995, at $4 (Feb. 3, 1936)).

Weed's interpretation of Section 3(a)(9) is unconvincing.

Section 5 of the Securities Act makes it unlawful for anyone

seeking to sell a security to do so without registering that

security unless certain exemptions apply. 15 U.S.C. § 77e.  At

issue here is the Section 3(a)(9) exemption of

> any security exchanged by the issuer with its existing
> security holders exclusively where no commission or other
> remuneration is paid or given directly or indirectly for
> soliciting such exchange.

15 U.C.C. § 77c(a)(9).

In its third claim, the SEC alleges that Weed, along with

Flaherty and Brazil, violated Section 5 by selling or offering

to sell CitySide securities that were not registered with the

SEC.  Weed contends that those securities were exempt from the registration requirement because Section 3(a)(9) should be read to apply to a class of securities rather than to a transaction involving a single security.  He suggests that, because the initial conversion of debt into common stock was exempted, that exemption is perpetuated as to any future transactions involving that security.  Pursuing that interpretation to its logical conclusion, whenever a promissory note is exchanged for a share of stock, the resulting share would forever be exempt from the registration requirements of Section 5.  Unfortunately for Weed and notwithstanding his vehement insistence to the contrary, that is not the law.

Weed attempts to import the title and preamble of the statute, referencing exemptions to "classes of securities", to alter the plain meaning of Section (3)(a)(9).  He suggests that, because the exemptions apply to classes of securities, once a security is exempt, it retains its exempt status in a subsequent transaction.  The plain text of Section 3(a)(9), however, exempts "any security exchanged by the issuer with its existing securities holders" rather than any security that has ever been or once was exchanged by the issuer. See Summit Inv. & Dev. Corp. v. Leroux, 69 F.3d 608 (1st Cir. 1995) ("The plain meaning of statutory language controls its construction.").

Although the plain language of the statute is clear, Weed's interpretation of Section 3(a)(9) is also suspect upon examination of the purposes of the exemptions.  Weed's reading of the exemption would undermine the statutory registration scheme.  To avoid the registration requirements under Section 5, a company would simply need to arrange for the exchange of a security for another kind of security, rendering the registration scheme a nullity. See King v. Burwell, 135 S. Ct. 2480, 2489 (2015) ("[W]hen deciding whether the language is plain, we must read the words in their context and with a view to their place in the overall statutory scheme.") (internal citation omitted).

Weed makes much of the fact that the Section 3(a)(9) exemption was transferred from Section 4, which explicitly refers to "transactions" rather than "classes of securities", to Section 3 in 1934. Compare Section 4(3), 48 Stat. 74, 77 with 15 U.S.C. § 77c(a)(9).  As the SEC clarifies, however, both the conference report to the 1934 amendments and the SEC analysis of the amendments confirm that the purpose of that transfer was to clarify that the registration requirements apply to dealers, a contested issue that had arisen after enactment of the statute. See H.R. Rep. 73-1838, at 40 (1934); Letters of [SEC] Gen. Counsel Discussing Application of Section 3(a)(9), Securities Act Release No. 646, 1936 WL 31995, at *4 (1936).  In

conclusion, both the plain language and the statutory purpose lead this Court to reject Weed's novel reading of the Section 3(a)(9) exemption.  Accordingly, Weed's motion for partial summary judgment will be denied.


## <u>ORDER</u>

For the foregoing reasons, the SEC's motion for partial summary judgment (Docket No. 69) is **ALLOWED** and Weed's motion for partial summary judgment (Docket No. 73) is **DENIED.**


**So ordered.**

/s/ Nathaniel M. Gorton_____
Nathaniel M. Gorton
United States District Judge

Dated May 25, 2018